Welcome to the first day of our panel sitting here in lovely Jacksonville. Judge Cho Flatt, Judge Legault and I are happy to welcome you. You know the lighting system when the yellow light turns on that means that your time is starting to draw to a close so you can begin to wrap up. If we take you beyond the red light then don't worry about it, just keep on going. You'll be on our time and not yours. We're ready to begin. Our first case is number 22-13569 United States v. Marion O'Steen. Mr. Gowdy. Good morning, may it please the court. Brian Gowdy on behalf of Mr. O'Steen and with me is Michael Ufferman, my co-counsel. Today I'm going to try to spend about 8 minutes on count 3, the Hobbs Act extortion and primarily on issue number 1. And then I'm hoping to shift in the last 4 minutes to count 4, dealing with the failure to timely file the form 8300 and focus on issues 3 and 4 in the blue brief. And I'll be happy to answer any questions about any of the issues but those will be my focus today. Okay, tell me this, the count 3 expressly charged Mr. O'Steen and Mr. Siegmeister with an aiding and abetting theory among others, right? Yes, your honor. I understand your argument that Mr. O'Steen, a private citizen, cannot act by himself under color of law of official right. Yes, sir. But surely a private citizen can aid and abet a public official who is working or traveling under official right to commit extortion, is that not right? I agree that could happen, yes. So tell me why, I'm sure you were going to get to it, but tell me why that could not have played out in this case? Well, first I'd point to question 6 on the verdict form. It didn't have the jury specify whether it was finding him guilty of extortion as a principle or extortion as aiding and abetting. So we don't know which the jury did do. What we do know though is in the closing argument and as the case was tried by the government, the theory was that Mr. Siegmeister, the prosecutor, was helping, were the words the prosecutor used more than once in her closing, was helping Mr. O'Steen to extort Mr. Tong, Mr. O'Steen's client. That's how it was tried below. It's now on appeal when we've pointed out this legal impossibility that the government shifted and tried to say that Mr. Siegmeister was aiding, I'm sorry, Mr. O'Steen is aiding too by... Right, thank you. But they flipped the roles here on appeal. That's not how it was tried below, and we don't know from the jury's verdict. And so we believe that's plain error, and we believe that we meet the substantial prong 3 of the plain error test, that there's a reasonable probability of a different outcome. Because of an insufficiency of evidence or because the jury instruction was wrong? Because the jury, there was a legally impermissible theory that went to the jury. The jury was instructed on that. The jury was allowed under the plain question in the verdict form to find on that theory. And that is the theory that was the alternative theory that you're bringing out is not the theory on how the government actually tried the case below. You know, at page 82, the prosecutor said Siegmeister agreed to help his friend and his former colleague attract that $60,000 from Tom. So the theory below was that O'Steen was the principal. Normally in a jury instruction, the court would have told the jury who is operating under Cullen Wright, that is, the Stigmeister, that O'Steen was helping him. Is there anything... I read those instructions two or three times that I couldn't figure out whether or not, especially given the argument of the jury, that this was a case in which the government was charging Stigmeister for with the extortion and O'Steen with aiding and abetting. But the way the indictment is read, they did aid and abetted each other. Right. Right. You don't know who was doing the doing. Right. But you do know this, Your Honor, it's on jury instruction 19, what the jury was told was to find the defendant, singular, which is Mr. O'Steen, caused... I noticed that, just named no names. But there was only one defendant at the trial. There was Mr. Stigmeister. That's true. It was the singular. Mr. Stigmeister was not a defendant, but . . . Although, in theory, it could have been tried, one defendant, as the aid or abetter. Sure. But my point is that . . . I understand your point. All right. Then I won't make it. It's misleading. Right. I understand. I did want to cover other points on this that are in the briefs, but I hope I've answered that question as well as possible. I guess just the other issue that's brought up in the briefs is that there was another alternative theory, or theories, for convicting Mr. O'Steen, and that was by force or violence, which was not charged in the indictment, but was in the jury instruction. Then, or by economic fear, which was charged in the indictment and was also in the jury instructions. If you look at the same verdict form, it just says extortion, and then extortion under color of official right. When we're talking about, I guess, what's been called general extortion, we don't know if the jury convicted on the force or violence, which was a constructive amendment of the indictment, or on the economic fear. The government tries to say that, well, these are the means of the offense, but in fact, in the Harris case that the government cites, it says the government must prove the constituent sub-element of the victim's fearful state of mind, and that's because unlike all the cases the government cites, in this particular statute, extortion is defined to be committed only by four different methods or means, or whatever word you want to use. Those four methods are force, violence, fear, or under color of official right. We've talked about the problem with the last one. The problem with the violence is in the instruction, but there's no evidence at all that Mr. O'Steen threatened violence. The government, though, at trial, in its rebuttal argument, and we pointed out in our brief, made the point that somehow Mr. O'Steen was using force with respect to threatening Mr. Tong because he was going to be facing prison time. That, as we argued based on the Madden case that, Judge Jordan, you were on the panel, that's error and plain error. It's a constructive amendment of the indictment. Then on the economic fear, there's multiple problems with that theory. First of all, if you think about the government's theory here, every criminal defense attorney who charges an excessive or unethical fee may be convicted of extortion under the Hobbs Act. That's not quite right. I think that is right, Your Honor, because That's not quite right because here, whatever you think of the sufficiency of the evidence and putting aside your other argument, it wasn't just . . . You have to admit that the evidence was not just that he charged a supposedly excessive fee, right? I understand that, but I think what I'm trying to . . . But that's not what . . . The premise of your argument is just not accurate. Well, I think it . . . I'm not trying to undermine any of your other arguments, but I don't think you can say that this case has more, whatever that more is worth, but it has more than just charging an excessive fee. If Mr. Osteen had simply charged Client B at the outset, listen, whatever I get for you, it's a flat retainer of $60,000, but nothing else. You're not suggesting that the government would have charged him with extortion. Well, I think . . . If he had never . . . If he had no contact with Mr. Siegmeister at all, hadn't helped Mr. Siegmeister in his election, hadn't talked to Mr. Siegmeister about what Mr. Client B wanted, he couldn't have been charged with extortion as anything, as a principal, as an aider and abetter, or anything else, right? I think under the economic fear theory, they could charge him, and I think what you're talking about, the more, and what the district judge commented about at the sentencing hearing, was how Mr. Osteen kind of said, look, buddy, if you don't go along with me, good luck at trial, you may end up going to prison. That's a by force theory. That's not economic fear, and the only potential economic fear here was the excessive fee, which, by the way, was the FBI's money. So I agree with you that there's more, but then that falls into the constructive amendment, because they didn't charge more. They charged economic fear. Yes, Your Honor. Did he turn to count four? Yes. I've got a minute and a half, so I've already blew my four minutes. Is there any evidence in the record that Mr. Osteen knew that he had to file the form 8300 within the 15 days? There is not. So here's the entire, all the evidence that could potentially be that. None of it will be good enough. One, there was a CLE course that lasted hours that they put the whole recording in, and they played the 30-second clip, and there's no mention of the 15-day requirement during that 30-second clip or the hours. Two, they put in the CTR pamphlet that the bank teller gave Mr. Osteen. You can read it. There's nothing in there about the 15-day requirement. And then the third thing was they had the agent testify about a blank form 8300. There's no evidence that Mr. Osteen read that. I have it here. This is it, all three pages of the instructions. You'll see right here highlighted is the fine print, and they're saying that, well, he must have somehow read this at some point, and therefore, he would have known about the 15-day requirement. But there was no evidence that he actually read this, and as it was charged in the indictment. Is that a form that, theoretically, you have to sign or initial? I'm sorry? Is that a form that you have to initial or sign? Well, he would have had to fill it out, but he did it at the 8-month point. So the question is whether he knew about the 15-day requirement at the time of the 15th day. I know. I understand that was my initial question. Yeah. I don't know if . . . I think he does have something to sign. There's two more pages I don't have here that would have made my board long. And I would just say we don't think there was any evidence, and I'm over my time. The jury instruction, the prosecutor who crafted it argued below he didn't need to prove knowledge for this 15-day requirement, and that's clearly wrong. And so, that would be issue four if . . . Sorry. Did the government argue that to the district court, that they didn't need to prove knowledge? Sure. The prosecutor did at one point, and then the defense attorney corrected them. And if you look, it's on page 50 of our brief. I lay out . . . there's four elements. I you'll see the knowledge requirement is in element two, and in paragraph four, twice willfully in knowledge, but it's omitted from three, which deals with the 15-day requirement, which was the only issue in this case, because Mr. Osteen indisputably filed the form. And so, the charge was failure to timely file. And the fact that . . . I would just say the fact that he filed it at eight months and after the FBI had apparently been public with his investigation, I just got a form from my accountant telling me I had a year to do it. I don't think it's unreasonable for people to think IRS deadlines could be a year out or whatever. The government had to prove that he knew it was to be filed within 15 days. There's no case law on this issue in the whole of the country, right? On this . . . well, I think there's plenty of case law about willfulness and knowledge under the statute. No, no, I'm talking about knowingly with regard to the time requirement. I don't think there's something on this specific regulation. That's correct. But the statute references the regulations, and the government charged it in the indictment under the regulations. And I don't think the government disputes that they had to prove knowledge. They just think they did. You can prove knowledge circumstantially, can you not? Sure. But again, I just went through it all. I won't go through it again. All we've got is this form that they have no . . . there's no evidence in the record that Mr. Osteen read this form. The only evidence . . . he did sign it after . . . he did submit it at the eight-month point, but the question is whether he knew about this 15-day requirement. And they don't link this up. This is just a form you can find on the internet. And I don't think that suffices for knowledge, Your Honor. Okay, Mr. Gowdy, thank you very much. You've saved your full time for rebuttal. Thank you, Your Honor. Ms. Gershow. Good morning, Your Honors, and may it please the Court. On behalf of the United States, I first want to start by addressing Osteen's invalid legal theory argument. And the first thing I think is I want to make clear that this is a jury instruction challenge and that this should be viewed as a challenge to the jury . . . Keep your voice up. I'm sorry. This is a jury instruction challenge and it should be viewed as a challenge to the jury instruction. And that's important because the invited error doctrine applies to bar any challenge to the jury instruction. And that's because Mr. Osteen's defense counsel agreed multiple times to the giving of this instruction. He started out by saying that at the beginning of the charge conference, after the district court had already received proposed jury instructions from both parties, the district court crafted its own proposed jury instructions using pieces from both parties' proposed instructions and then adding some of its own language. The district court starts by going through the instruction, instruction by instruction, and defense counsel stops the district court and says, Your Honor, may I make a suggestion, a request, from the defense point of view, we were in agreement with all of the court's proposed instructions. I only have some quibbles on instructions 16, 18, 19, and 21. He then goes through those quibbles with respect to those instructions and with respect to instruction 19, which was the extortion instruction, the substantive extortion instruction, his quibble was with how the quid pro quo instruction should be given. And they reach a resolution to that. They go through the instruction and then the defense counsel, the court again asks defense counsel if the instruction is acceptable to the defense. Defense counsel said, Yes, Your Honor. The court then gave the final version of the jury instructions to the parties to review. And defense counsel said, Judge, the jury instructions are fine. They are what we agreed to. That is subject to the objections I made before, of course. So what you have here is an agreement to the giving of the jury instructions in reception of the objections that they raised. And so this falls directly under the Carter case and the Feldman case where when defense counsel agrees to the jury instructions after their objections are sustained, the invited error doctrine applies and the court may not review the jury instructions, even a plain error would result. And so it is, without ignoring that argument, is Mr. Gowdy right that the government argued in part below that it was Mr. Sigmeister who was helping Mr. Osteen extort Client B? He is correct but not giving the full story. And the full story is that there were two theories of extortion here. There was extortion under color of official right and there was extortion through threats of fear, violence and force. No, that's not what the indictment charges. The indictment charges economic harm. It doesn't charge anything else except for the official right theory. And fear of an extortion through fear of economic harm. Correct, but not the others you said. Correct. And I think that this case is prosecuted solely on the theory of under color of official right and extortion through threats of economic fear. But my point was that when the prosecutor is arguing that Sigmeister aided and abetted Osteen, it was through Osteen's extortion of Sigmeister through fear of economic harm. How could Osteen extort Sigmeister? No, I'm sorry, Osteen was extorting Tong. I'm sorry if I misspoke. So, Sigmeister was aiding and abetting Osteen's extortion of Tong through the use of fear because Osteen was telling Tong, if you don't pay me the $60,000, you're going to get, I'm not going to cash in my favor, you're going to get a felony conviction. And Sigmeister was aiding and abetting that by withholding the PTI and waiting for Mr. Green. So under that theory of extortion, which is charged in the indictment, Sigmeister was aiding and abetting Osteen. Where's the economic harm to Tong there? So Tong, the facts of the case make clear that Tong operated an illegal gambling business in Florida. He wanted to go back to California and continue to operate his gambling business there where it would be legal. But he was afraid of getting a, that if he got a felony conviction, it would prevent him from continuing to operate his gambling business. Which is analogous to what happened in the Harris case where the inmates were running an illegal phone scam. The correction officer was taking the green dot cards that were the proceeds of their offense and rather than turning them in, keeping him for himself. And the court said the inmates feared economic harm because had their scheme been found out, they wouldn't have been able to continue to operate their lucrative scam. And so they said there was sufficient evidence that Harris, the correction officer, had taken advantage of the inmate's fear. And that's the same thing that happened here. And so going back to the closing argument, what defense counsel quoted is not the full story. What the court said is, Sigmeister worked hand in hand with Osteen to help Osteen extort his client. All while helping Sigmeister get what he wanted as well. So it's charging them both. They're helping each other extort Tong. Osteen is extorting the excessive fee. Sigmeister is extorting the $1,500 that he's getting in exchange for doing the official act of giving PTI instead of a felony conviction. Your biggest problem in trying this case is that Sigmeister was not sitting in the dock. Otherwise it would have been a classic, he's doing the extortion and Osteen is doing the aiding and abetting. But you've got this oddball situation in which you've got one defendant. We really did have to, we had to. That's the government's problem. When you dismiss that third count against Sigmeister, it created a problem. I mean, that's at the bottom of the whole thing. But I mean, I still think that the, all the... And then the judge would have charged the jury as to who the principal was, basically. Correct. But the judge... The judge did instruct the jury on what it means to commit extortion. You read these jury instructions and you can't figure out who is who. Well, I think, again, that goes to plainness. I guess you've got to go, well, about the only way you can figure out who is whom is to read the closing argument to the jury. I don't think that's 100% fair. And I also, again, think we're under plain error review here and so it's got to be plain that these instructions were wrong and not just maybe they weren't the most clear instructions that could have been given. I mean, that plain error is assuming that we get past the invited error argument. But if you're looking at plain error, it's got to be... The color of right obviously applied to the prosecutor. Yes. And it also applied to Osteen through an aiding and abetting theory. And also, I do think... Let me just... I really quickly want to read what the jury instruction said about color of official right because it said that color of official right requires the public official to take or receive the property in exchange for the official act. And since the public official in this case was Siegmeister, that doesn't leave any room to convict the defendant, Osteen, as a principle to extortion under color of official right because factually that's not supported. He was not the public official. And I understand my friend's argument that the element set out the defendant cause, but there's also an aiding and abetting instruction. And the aiding and abetting instruction says that the defendant doesn't have to commit to every act charged. So when you read these jury instructions in total, they instruct on a theory of aiding and abetting life. Who does the jury think is in this instruction, number 19? Who does the jury think extorting under color of right? Siegmeister. Yeah. He's not the defendant sitting in the dock. Right, but that's okay because of the aiding and abetting instruction that says the defendant doesn't have to commit every act charged. And so I think when you— The aiding and abetting instruction split out the two theories of extortion? It did not. It's a mess. They're kind of a mess, but again, one, they were invited, and two, if they're— That doesn't excuse what happened down there. I mean, this stuff has to get done in a better way. I would agree, Your Honor. I mean, I think everyone tried their best. Like I said, the parties submitted. All right, but this is a criminal case. Trying your best is not good enough, is it? We don't mean you individually. I understand. Well, I would say a criminal defendant is entitled to a fair trial. They're not entitled to a perfect trial, and that under the facts and circumstances of this case, he received a fair trial. This is just me ranting. Okay. It has nothing to do with how this case is going to come out or how we're going to discuss it and evaluate it, but when the government charges a case like this one, it needs to think out ahead of time how everything is going to play out and what jury instructions are going to be drawn and how they're going to apply and how they're going to be clear and how each theory is going to be proven or not proven, and then once Mr. Stigmeister pleads guilty and counts are dismissed pursuant to a plea agreement, that has to get completely reevaluated again. I agree, Your Honor. That's the end of the rant. I agree. And again, had Mr. Osteen objected to any of these jury instructions, then perhaps it would have gotten . . . Well, let's talk about the one thing that he did object to, which was the knowledge element on count four. Can we talk about that? Yes. With respect to the jury instruction or the sufficiency of the . . . We could do both. Why don't we start with sufficiency and then the other one? Starting with sufficiency of the evidence, it is . . . I don't think it's necessary to start that the government proved that he knew that there was a 15-day requirement. But isn't that what the charge is? It's a failure to timely file. It's not a failure to file, period. Correct. You have to know if it's a failure to timely file, then you must know there's an implication that you have a knowledge element that you have to file within a certain required time period, correct? Correct. I think that it would be enough to show that the defendant knew he had to file it before he did. Let's say he thought he had six months, but he waited . . . What evidence do you have? Because according to your friend on the other side, there is no record evidence that he had any knowledge. I think that that is mischaracterizing the evidence because . . . Okay, so why don't you tell me what the evidence is? The evidence is that he had a general sense. He's a lawyer. A general sense, okay. I didn't know that that was a mens rea now. It's not. I'm trying to build. What's the evidence that showed that he had a general sense? He had . . . Specific facts. Specific facts. He had attended the course that talked about the reporting requirement. Okay, and what did that course say? Did that course specifically say it was a 15-day requirement? It did not. Okay, all right. So then next thing you have in the record? Next thing you have in the record is . . . So far you have zero. He structured the . . . He was attempting to structure a transaction, and he asked the bank teller how much until this gets reported, and the bank said . . . The clerk tried to give him a pamphlet, and he said, I already know all of this. And then the evidence is that he didn't file the form until after the FBI went. Again, this is not a situation where he failed to file, and you're charging him with failure to file. You are charging him with failure to file within a particular time period. So do you, as the government, and, again, I'm not saying you, because you're not trial counsel and I understand that. Do you, as the government, have an obligation to prove as an element knowledge of the time requirement? I think in this case, yes, because otherwise he did file the form, and so we can't prove he just didn't file the form. We have to prove that he knowingly didn't timely file the form. But I think that the jury is allowed to use its common sense. It's allowed to rely on circumstantial evidence. It is allowed to make inferences from the evidence. What evidence? What specific piece of evidence yields the inference that he knew? That once the FBI went overt, he said, oh, I didn't do this thing I was supposed to do. Okay, but, again, that's after the fact. You're charging someone with knowledge that once they got $10,000, they had 15 days to file this report. So you cannot give me any evidence of after the fact when the FBI knocked on his door. You need to give me evidence that he knew prior to the moment in time when he got the $10,000 that he had a 15-day window to file this report. What is the evidence? Well, again, I don't think we had to show that he knew he had 15 days. I think we had to show he knew he couldn't wait eight months to do it, and I think that the evidence shows that he knew he could. Are you suggesting, then, that you do not have to show that he knew that he had a knowledge of 15 days or that he had a time requirement within which to file? I think we had to show that he had a time requirement to which to file and that he knew that he filed. So if he learned, if he was told incorrectly at the CLE seminar that he had 30 days to file, would you then still be making the argument that he knew that he had 15 days to file? No. Okay. So then the answer is no, not a general knowledge of time requirement, but a specific requirement of 15 days. Well, I guess if they had told him he had 30 days to file it and he waited 60 days to file it, I would say he had knowledge that he didn't timely file it because he thought he had 30 days and he waited 60 days. So, I mean, the point is that I think a reasonable jury can look at this, can say this is a lawyer who— You can be a lawyer, right, and you could be a real estate lawyer and not know how to do that you have a certain amount, 90 days to file an EEOC complaint, correct? That's correct. All right. So just because you're a lawyer doesn't mean that you have general knowledge of any and all law. Right. You don't have a situation here where you have a lawyer who is doing real estate transaction and is commonly filing these types of forms, correct? No, but I have a lawyer who's accepting payments. Do you have a lawyer where you can show that he knew about and he filed these forms on a frequent basis? No. No, you do not. On the jury instruction issue related to this count, as I understand your brief, page 44, it is that the district court adequately covered knowledge with this language. The defendant acted willfully, that is, he had knowledge of the currency transaction reporting requirements and failed to file a Form 8300 for the purpose of evading those reporting requirements. Yes. Is that the substance of the argument? That is the substance of the argument. But that instruction doesn't capture timing, does it? Well, except for the element. Because he did file. Right. The element above said the defendant failed to file a Form 8300 with the Financial Crimes Enforcement Network within 15 days after receiving the currency. And then it says that the defendant had to act willfully. So I think when you read those in connection, it adequately covers that it had to be. If you agree that knowledge is required, again, I don't mean you personally, but if the government agrees that knowledge is required, why fight an instruction that has knowledge expressly designated as an element? I'm not. I think it's possible that it was because, as I'm arguing, that it wasn't necessarily the knowledge of the 15 days. It was the knowledge that he couldn't wait eight months to do it. The problem with that is you're basically saying to the jury, you have to find knowledge of some open-ended timing requirement. That timing requirement could have been anything. It could have been three months, six months, nine months, 12 months, two years. And this is proof beyond a reasonable doubt in a criminal trial. I understand, Your Honor. I would just like to go back and say that the jury instruction also says, pursuant to Section 5331B, the Secretary of the Treasury has promulgated regulation requiring a trader business that receives more than $10,000 in coins or currency in one transaction file. Did you have evidence that he knew about that regulation? Well, I'm talking about the correction of the jury instructions. Within 15 days of the transaction, so that puts forth what the regulation is. And then in Element 4, it says that the defendant acted willfully, that he had knowledge of the currency transaction reporting requirements. I know, but you could have fixed that by saying the transaction reporting and timing requirements, and that probably would have taken care of it. It definitely would have been more clear. Just to understand why, if the government acknowledges that knowledge is a required element, although you differ with Mr. Gowdy about exactly what the knowledge has to be about, why you would fight a jury instruction that expressly tells the jury about knowledge? I understand that, Your Honor. All I can say is that the district court got it right, rejected our argument, said that this covered it, and also that in closing argument, although I agree with you that the prosecutor got it wrong when he was fighting about the jury instructions, but got it right during closing argument because at closing argument, they say the evidence is before the FBI showed up at his door. Mr. Oseen had no intention of filing this required form. He was going to take the money and put it in a sock, is what he said on September 4th meeting, and hope the IRS and the federal government didn't find out. They also talk about that this shows his intent. They talk about showing intent to untimely file it, so I think that ultimately we did argue it correctly to the jury, even though we did ask for an incorrect instruction that we didn't get. All right. Thank you very much. Thank you. Mr. Gowdy. Thank you, Your Honor. I want to jump right into invited error. The issue we presented on page one of the blue brief was whether the district court committed plain error when it convicted Mr. Oseen on count three. The district court didn't convict Mr. Oseen?  Well, I think I understand conviction to be judgment, and that's entered by the court, not the jury. This is my sort of global view of your issue one. You are mixing and mashing all sorts of different theories under an umbrella of a jury instruction reviewed for plain error. That's the heading of issue one, plain error jury instruction. You convicted him when you couldn't have convicted him of extortion because he's not a public official. Within that, you say, among other things, Oseen's a private citizen. The jury instruction is not harmless error. There's no aiding and abating theory that can support his conviction. The wrongful use of actual or threatened force constructively amended the indictment, and no evidence of extortion through fear of economic harm. Right. Those are arguments that are all over the lot with regards to different – constructive amendment is a different legal theory. Sufficiency is a different legal theory. But this is all under an umbrella of a jury instruction that supposedly constituted plain error. So number one, Your Honor, I did not use the word jury instruction in the issue presented. I said convicted. Number two, the error was in the indictment, and it infected every stage of the proceedings until the end. And what this district judge should have done is exactly what the district judge did in Percoco, the Southern District of New York case that we cite that actually eventually went up to the Supreme Court. The district judge, Sua Sponte, asked the parties to brief this issue before the trial and then did not present the theory to the jury. So, yes, I did say in the brief that by instructing the jury that was plain error, it's not the wording that was wrong. It was the fact that the theory went to the jury at all. And this district – What's plain error? Plain error – Are you going to dismiss the indictment, Sua Sponte? Well, I know that – yes, that's – and Judge Schofield, I know, asks sometimes in oral argument, when did the judge err? The judge erred by letting this case go to the jury. At the Rule 29 stage? At the post-closing argument stage? Exactly. Or at – All. All of the above. All of the above. That's not in your brief. Well, I said convicted. Yeah, so you're proceeding under the civil theory that an appeal from a final judgment brings up every other interlocutory order beforehand. Right. That's not the way it works. I didn't say jury instruction in Issue 1. You said the jury instruction was not harmless error. I did say that because – and the reason, if I can finish, is that we recognize that for plain error, we have to show more than just the error and that it's plain. We have to show under Prong 3 – and I acknowledge harmless error was not the right term. That's Rule 52A. We're operating under Rule 52B. I have to show that it's affected the substantial interest of the defendant, which means I have to show there's a reasonable probability of a different outcome. So everything you talked about under that umbrella is so that I can show a reasonable probability of a different outcome. I wish the government would have agreed to my harmless error argument. They didn't. I will acknowledge they're correct about that. I have to show this. I bear the burden under Prong 3. We made all those arguments because we realized that there were these other theories, and we have to address them. The question is, can this court conclude with sufficient confidence under that reasonable probability standard that Mr. Oesting was not wrongfully convicted of an invalid, impossible legal theory? And we submit you cannot. And therefore, you should reverse on Count 3. All right. Thank you very much. Thank you, Mr. Oeschel.